[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13203
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00272-CEH-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON SANON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 15, 2018)

Before ED CARNES, Chief Judge, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

A jury found Jason Sanon guilty of one count of conspiracy to traffic in counterfeit labels and goods, in violation of 18 U.S.C. § 371, and three counts of trafficking in counterfeit goods, in violation of 18 U.S.C. §§ 2320(a) and 2.  He appeals his convictions, contending that the district court erred by admitting certain evidence and refusing to give a requested jury instruction.  He challenges his 33-month sentence on the ground that the court erroneously determined the loss amount from his scheme.

I.

Sanon owned and operated a website called Wipeout DVDs.  The government began investigating Sanon when it discovered that he was sending a significant amount of money to the account of "China Glenn," the alias of an individual named Jian Huang.  Huang operated a Chinese company named TM Wholesale, which sold counterfeit DVDs.  Sanon used TM Wholesale as Sanon's supplier for counterfeit DVDs:  Customers would order the counterfeits from Wipeout DVDs, Sanon would pay TM Wholesale, and then TM Wholesale would ship the DVDs to Sanon's customers.  A forensic analysis of Huang's computer disclosed emails between Sanon and Huang related to DVD orders and shipping information for Sanon's customers.[1]  An investigator for the Motion Picture

---

[1] Huang visited the United States to meet with Sanon and another potential customer, but federal agents arrested him when he arrived.  The agents seized his computer, and Huang eventually pleaded guilty and cooperated.

2

Association of America, after learning of the government's investigation into Wipeout DVDs, ordered DVDs from Sanon's website and determined that they were counterfeit. Other investigators testified that the DVDs from Wipeout were counterfeit, and a customer testified that he believed some of the DVDs he purchased from Wipeout were counterfeit.

Government investigators eventually interviewed Sanon, and he confessed to the counterfeit DVD scheme. He admitted to owning and operating Wipeout DVDs and stated that he knew that the DVDs he sold were counterfeit. And he also explained how he dealt with China Glenn at TM Wholesale and admitted to sending TM Wholesale about $600,000 through PayPal (an online payment service) as payment for the DVDs.

A grand jury indicted Sanon on one count of conspiracy to traffic in counterfeit labels and goods and three counts of trafficking in counterfeit goods. The indictment alleged that Sanon engaged in that conduct between December 2010 and April 2013. The case proceeded to a five-day jury trial.

At trial the court admitted several pieces of evidence over Sanon's objections. The government called an individual who testified that he had visited TM Wholesale's website and that he viewed the company's "motto statement": "We strive to make quality products, making our merchandise as close as possible to the original." Sanon objected to that motto on hearsay grounds. The

3

government responded that it was not offering the motto for the truth of the matter asserted (that TM in fact strives to make quality merchandise as close as possible to the original), but that the motto existed on the website and that people could see it there. The court admitted that piece of evidence.

Sanon also objected on hearsay grounds to a computer file obtained from Huang's computer. That file, which the government introduced as a screenshot from Google Earth, showed that Huang had used Google Earth to locate Sanon's address in Florida. The screenshot contained a pin dropped on Sanon's address and included his phone number. That computer file was created about a week before Huang's trip to the United States, when he planned to visit Sanon. The government argued that it was not presenting the evidence for the truth of the matter asserted (that Sanon lived at that address), but to show that Huang had information about Sanon on his computer. The court admitted the evidence.

The final evidentiary issue involved Sanon's confession. Before the government agent testified about that confession, Sanon objected on the ground that testimony about his confession would be improper because there was not enough independent evidence that he knew that the DVDs he ordered from TM Wholesale were counterfeit and, as a result, knowingly engaged in a conspiracy to

4

deal in counterfeit goods.[2]  The court overruled that objection and admitted the confession, ruling that the government presented sufficient extrinsic evidence corroborating the existence of a conspiracy.

Sanon also asked the court to give the following "buy/sell transaction" instruction to the jury:  "Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown."  The court denied that request on the ground that the evidence showed that Huang and Sanon had a continuing, supplier/dealer relationship, which meant that the buy/sell instruction was inappropriate.

The jury found Sanon guilty on all four counts.  Sanon's guidelines range was 51 to 63 months imprisonment, and the court sentenced him to 33 months. This is his appeal.

## II.

We review for abuse of discretion the district court's evidentiary rulings. ML Healthcare Servs., LLC v. Publix Super Mkts., Inc., 881 F.3d 1293, 1297 (11th Cir. 2018).  We also review for abuse of discretion a district court's decision whether to give a proposed jury instruction.  United States v. Jeri, 869 F.3d 1247, 1268 (11th Cir. 2017).  And we review for clear error the district court's factual

---

[2] Despite Sanon's confession that he knew he was dealing in counterfeit DVDs, at trial he contested that point.

findings at sentencing and review <u>de novo</u> its application of the guidelines to the facts.  <u>United States v. Bradley</u>, 644 F.3d 1213, 1283 (11th Cir. 2011).

### III.

Sanon contends that the district court abused its discretion by (1) admitting TM Wholesale's motto statement, the Google Earth screenshot from Huang's computer, and his confession and (2) refusing to give the jury his proposed buy/sell transaction instruction.  As for his sentence, he contends that the court clearly erred in calculating the loss amount attributable to his counterfeit DVD sales.

### A.

Sanon argues that the TM Wholesale motto and the Google Earth screenshot are inadmissible hearsay.  Hearsay is an out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Sanon asserts that the government introduced the motto ("We strive to make quality products, making our merchandise as close as possible to the original.") for the truth of the matter asserted — that TM Wholesale in fact advertised counterfeit merchandise.  And he asserts that the Google Earth screenshot was offered to prove that Sanon lived at the address listed on the screenshot.

Those arguments fail because the government did not offer either piece of evidence to prove the truth of the matter asserted.  The government did not offer

6

the TM Wholesale motto to show that TM Wholesale in fact sold counterfeit goods, but to establish that a person viewing the website would have reason to know that its goods were counterfeit. See United States v. Rivera, 780 F.3d 1084, 1092 (11th Cir. 2015) ("Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay."). The government called witnesses who testified to seeing the motto and the effect that it had on them, which shows that the motto was not being offered for the truth of the matter asserted.[3] See id.

Likewise, the government offered the Google Earth evidence not to prove that Sanon lived at the address marked on the screenshot, but to show an association between Huang and Sanon. That was a non-hearsay purpose.[4] See United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. Unit B July 1981) ("The government offered the letter for the limited purpose of linking the appellants with the vessel and with one another. The use of the letter for this limited purpose was not hearsay. The letter was not introduced to prove the truth of the matter asserted; rather, it was introduced as circumstantial proof that the appellants were associated

---

[3] There was also plenty of other evidence that TM Wholesale sold counterfeit DVDs, such as testimony from a Motion Pictures Association of America investigator who inspected DVDs obtained through Sanon's company (which purchased its DVDs from TM Wholesale) and determined that the DVDs were counterfeit.

[4] Sanon relies on the Ninth Circuit's decision in United States v. Lizarraga-Tirado, where the court determined that when an individual marks a location on Google Earth by manually dropping a pin on the map and then labeling it with a name or GPS coordinates, then that pin is hearsay. 789 F.3d 1107, 1109 (9th Cir. 2015). But that decision is off point because the government was using the Google Earth pin in that case for the truth of the matter asserted — that the pin indicated where the defendant was located when he was arrested. Id. at 1108.

7

with each other and the boat."); see also United States v. Koch, 625 F.3d 470, 479–80 (8th Cir. 2010) (affirming the admission of documents where they were used as "circumstantial evidence associating [the defendant] with the computer and flash drive," not to show that the defendant authored the documents). As a result, the district court did not abuse its discretion in admitting that evidence.

Sanon also argues that the district court erred in admitting his confession because there was insufficient independent evidence to prove that he conspired with Huang. See United States v. Green, 873 F.3d 846, 853 (11th Cir. 2017) ("[A] confession must be corroborated in order to sustain a conviction; a defendant cannot be convicted solely on the basis of his own admission.") (quotation marks and alterations omitted), petition for cert. filed (U.S. Jan. 5, 2018) (No. 17-7299). That argument fails because there was significant independent evidence corroborating the existence of a conspiracy before the district court admitted Sanon's confession. Investigators testified that the DVDs from Sanon's website were counterfeit. Huang's computer contained emails from Sanon about DVD orders and shipping information for Sanon's customers. And there was extensive evidence that Sanon had paid Huang for the DVD purchases. All of that extrinsic information corroborated Sanon's confession. Cf. id. at 853–54 (concluding that "extrinsic evidence substantiate[d] [the defendant's] admission that he engaged in a drugs-for-firearm transaction" because he was arrested in "close proximity" to

8

"[d]rug paraphernalia, methamphetamine, and .22 caliber ammunition"). As a result, the district court did not abuse its discretion in admitting Sanon's confession.

B.

Sanon next argues that the district court abused its discretion in refusing to give his proposed buy/sell transaction instruction to the jury. The district court rejected that instruction on the ground that it was unsupported by the evidence.

That ruling was not an abuse of discretion. The purpose of a buy/sell transaction instruction is to distinguish between a single transaction and a conspiracy. See United States v. Guerra, 293 F.3d 1279, 1286 (11th Cir. 2002) ("The buyer-seller rule in the context of counterfeit goods is directed primarily at distinguishing co-conspirators from individual purchasers of the goods . . . ."). But as the district court stated, a buy/sell transaction instruction was inappropriate because the evidence showed a continuous supplier/dealer relationship between Huang and Sanon. See United States v. Brazel, 102 F.3d 1120, 1140 (11th Cir. 1997) (rejecting the argument that the district court erred in refusing to give a buy/sell instruction where the evidence "plainly showed much more than a buyer-seller relationship"). For instance, TM Wholesale filled multiple DVD orders for Sanon and Sanon sent multiple payments to Huang. See Guerra, 293 F.3d at 1286 (concluding that a conspiracy, and not an "isolated buy-sell transaction[ ]," existed

9

where there was evidence "regarding the duration and repetition of the transactions," which showed a "commercial supplier-dealer relationship among the defendants"); see also United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) ("In the case of a purchaser of narcotics, we have held that agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser."). As a result, the district court did not abuse its discretion in refusing the proposed buy/sell instruction.[5]

## C.

Sanon challenges his sentence on the ground that the district court clearly erred in finding a loss amount of $1.2 million. The presentence investigation report calculated that amount based on Sanon's confession that he had sent about $600,000 to TM Wholesale and that he paid about $6 for each DVD. The PSR determined that Sanon had sold 100,000 DVDs (600,000/6), and the investigators estimated the average retail price of a DVD as $12, leading to the $1.2 million loss amount (100,000 x 12). That loss amount resulted in a 14-level increase to his base offense level. See United States Sentencing Guidelines § 2B1.1(b)(1)(H)

---

[5] The court also properly instructed the jury on the elements of a conspiracy: that it requires (1) an agreement "between two or more persons to commit a crime" and (2) "that the defendants knowingly and voluntarily joined or participated in the conspiracy." United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir. 2005). For that additional reason, the district court's refusal to give the buy/sell instruction was not an abuse of discretion. See United States v. Lively, 803 F.2d 1124, 1128–29 (11th Cir. 1986) (concluding that where the court properly instructed the jury on the elements of a conspiracy, those instructions "adequately and correctly covered the appellant's requested instruction on simple buyer/seller transactions").

(Nov. 2016) (providing for a 14-level increase where the loss amount is between $550,000 and $1,500,000). Although Sanon does not challenge the PSR's methodology, he argues that the PSR should have used $431,000, not $600,000, as the basis for the loss amount.

That argument fails because even if the district court erred in calculating the loss amount, any such error was harmless. See United States v. Raad, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005) ("Because we conclude that the district court correctly imposed the statutory mandatory minimum sentence, any error in the guidelines calculations is harmless and we need not address these arguments."). The $431,000 amount, divided by 6 (the amount Sanon paid for each DVD), yields 71,833 DVDs. And if we multiply that amount by $12 (the retail price of each DVD), the loss amount comes out to $862,000. Under the guidelines, that amount would result in the same 14-level increase. See U.S.S.G. § 2B1.1(b)(1)(H). As a result, any error in calculating the loss amount was harmless.

**AFFIRMED.**

11